IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| KAREN JEAN ERWIN and<br>ALBERT SIDNEY ERWIN, JR,<br><br>  Plaintiffs,<br><br>v.<br><br>METALCRAFT OF MAYVILLE, INC.<br>D/B/A SCAG POWER EQUIPMENT,<br>SGAG POWER EQUIPMENT, SCAG<br>POWER EQUIPMENT, A DIVISION<br>OF METALCRAFT OF MAYVILLE,<br>INC. and SCAG POWER EQUIPMENT<br>DIVISION,<br><br>  Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 4:22-cv-624 |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

COMES NOW, Karen Jean Erwin and Albert Sidney Erwin, Jr., Plaintiffs, and file their Original Complaint against the above-named Defendant, and would respectfully show the Court as follows:

### I. PARTIES

1.1   Karen Jean "Jeanie" Erwin, hereinafter referred to as "Plaintiff," is a resident of Collin County, Texas and a citizen of the State of Texas.

1.2   Albert Sidney "Sid" Erwin, Jr. is a resident of Collin County, Texas and a citizen of the State of Texas.

1.3   Plaintiff and Albert Sidney Erwin, Jr. shall hereafter be referred to collectively as Plaintiffs.

1.4     Defendant Metalcraft of Mayville, Inc. d/b/a Scag Power Equipment, SGAG POWER EQUIPMENT, Scag Power Equipment, a Division of Metalcraft of Mayville, Inc. and Scag Power Equipment Division (hereinafter "Defendant SCAG" or "SCAG"), is a corporation organized under the laws of the State of Wisconsin, with its principal place of business located at 1000 Metalcraft Drive, Mayville, Wisconsin 53050.

1.5     Defendant SCAG maintains no registered agent for service of process as a foreign corporation with the Texas Secretary of State.  Thus, Metalcraft of Mayville, Inc. may be served at its home office/principal place of business via the Texas Secretary of State pursuant to Sections 17.041, 17.044 and 17.045 of the Texas Civil Practice and Remedies Code.  This lawsuit arises from Defendant Scag's business in the State of Texas.  Alternatively, from Plaintiffs' research, Defendant Metalcraft of Mayville, Inc. maintains a registered agent for service of process in the State of Wisconsin and may be served through its registered agent, Martin A. Gallun at 1000 Metalcraft Drive, Mayville, Wisconsin 53050.

## II.  JURISDICTION AND VENUE

2.1     The Court has original jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. §1332(a).  Plaintiff is a citizen of Texas.  The Defendants are citizens of South Carolina, New York, Delaware, California, and Japan.  The amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs.

2.2     Personal jurisdiction exists over Defendant in this District, as it continuously and systematically maintains contracts with and in the Eastern District, including events giving rise to this case, including but not limited to supplying the product at issue in the District.

2.3     Venue is also proper in the Eastern District of Texas and in this division, under 28 U.S.C. §§1391 (a) and (c).  Defendants "reside" in all four federal districts in the State of Texas

and are subject to personal jurisdiction in the Eastern District of Texas and the State of Texas, due to their continuous and systematic contacts with and in the Eastern District of Texas.

### III.  FACTUAL BACKGROUND OF THE CASE

3.1     Plaintiffs purchased a "Tiger Cub" riding lawnmower from a Dallas-area retailer to utilize in lawn maintenance, including use at their residence in this District (hereafter the "Lawnmower").  The Lawnmower maintains model and serial numbers for both the engine and decking.

3.2.    The "Tiger Cub" model and the Lawnmower are designed, manufactured, marketed, and distributed for sale in the stream of commerce by Defendant SCAG.  The "Tiger Cub" was an expensive model costing thousands of dollars.  Defendant SCAG represented that the model and Lawnmower were "built to the highest standards in the industry."

3.3     The Lawnmower has moving parts that can be dangerous.  This certainly includes the blades of the Lawnmower, but also there are drive belt(s), including related pulley(s), that assist the blade spindles to make the Lawnmower function.  It was critical for Defendant SCAG to design, manufacturer, and warn end-users against the dangers of physical injury that might result from use of the Lawnmower.

3.3     On or about November 21, 2020, Plaintiff was operating the Lawnmower per her normal habit and practice of lawn maintenance.

3.4     During its use, debris/leaves accumulated on the top of the right side/deck of the Lawnmower by her right foot.  Plaintiff then brought the Lawnmower to a stop and reached with her right hand to brush away the debris/leaves.

3.5     Plaintiff's right hand then came into contact with the drive belt and was pulled in a manner that resulted in the severing of two of her fingers on her right hand.  Plaintiff screamed for help and was assisted in cutting the belt to release her hand.

3.6     Plaintiff was transported for medical care and a medically necessary partial amputation of two of her fingers resulted.

3.7     The area of the Lawnmower that resulted in Plaintiff's injuries was not protected by safety or other guard(s) against the foreseeable risks and danger of operators' impact with the drive belt under the same or similar conditions that Plaintiff encountered.

3.8     There are industry standards that were well-known to Defendant SCAG as to the proper design and necessary warnings for end-users of the Lawnmower and model concerning the foreseeable dangers to end-users.

3.9     There were safer alternative designs available in the market and, upon information and belief, known and utilized by Defendant SCAG to guard and protect against the dangers and risk of injury suffered by Plaintiff at the time the Lawnmower was designed, manufactured, marketed, and placed in the stream of commerce.  Defendant SCAG failed to use or incorporate these designs, although economically feasible and technologically available to Defendant SCAG.

3.10    Additionally and alternatively, to the extent Defendant SCAG failed to instruct its authorized retailers and distributors to utilize the economically feasible technology available for the Lawnmower.

3.11    At the time of Plaintiff's injury, Plaintiffs had not altered the Lawnmower's design or marketing from the condition they received it at the time of purchase.

3.12    The Lawnmower remains in substantially the same condition as it was at the time of the injury to Plaintiff.

3.13    Plaintiff underwent significant surgical and medical treatment for her injuries. Her injuries necessitate the use of prosthetic device(s) to conduct activities of daily life and recreation, although such activities are now limited because of her injury. Plaintiff is likewise physically disfigured, based on her injuries. Plaintiff's injuries are permanent and partially-disabling.

### IV.    COUNT ONE: STRICT LIABILITY FOR A DEFECTIVE PRODUCT

4.1.    Plaintiffs reallege paragraphs 1.1 through 3.13, as set forth in this complaint, *verbatim*.

4.2.    The Lawnmower in question was designed, manufactured and marketed by Defendant SCAG and authorized for sale by Defendant SCAG. Defendant SCAG was and is actively engaged in the business of introducing such products into the stream of commerce, including the Eastern District of Texas. The Lawnmower reached Plaintiffs without substantial change from the date of manufacture and delivery.

4.3.    The Lawnmower in question was unreasonably dangerous and therefore defective and unsafe for its intended purposes at the time of its design, manufacture, sale and/or transfer by Defendant SCAG and at the time Plaintiffs took possession and/or ownership of it.

4.4.    The Lawnmower was defectively designed, defectively manufactured, defectively marketed, and unreasonably dangerous for reasons principally related to its safety and guarding features, including, but not limited to, the following:

    a.    The design and/or manufacturing of the Lawnmower failed to provide sufficient strength and/or integrity against the operator's intrusion against the area housing belt and pulleys;

    b.    The design and/or manufacturing of the Lawnmower failed to provide safety protections or safety guards prohibiting or eliminating the operator's intrusion against

      the area housing the mower's belt and pulleys, including and particularly while the mower was powered and in use;

c.    The design and/or manufacturing of the Lawnmower failed to provide a system that disabled the pulleys and belting system while stopped;

d.    There were absent and inadequate warnings to end-users concerning the risk of injury of the design failures or limitations of the Lawnmower;

e.    The Defendant SCAG failed to adequately train, warn and/or assist dealers and distributors concerning known or reasonably foreseeable dangers associated with the Lawnmower;

f.    The Defendant SCAG failed to disclose known problems and defects regarding the inadequacies associated with the Lawnmower, instead describing it as state of the art with industry standards when it was not;

g.    The Defendant SCAG failed to inform consumers, including Plaintiff, of relevant information that they knew about the risks in the Lawnmower;

h.    The Defendant SCAG failed to comply with applicable and required industry and Approved American National Standards ("ANSI");

i.    The Defendant SCAG failed to notify consumers, as required by law, that defects existed in the Lawnmower that relate to public safety;

j.    The Defendant SCAG failed to recall the mower or alternatively, retrofit the Lawnmower to insure Plaintiff's safety; and

k.    The Defendant SCAG failed to utilize alternative feasible designs for the Lawnmower.

4.5. Pursuant to Tex. Civ. Prac. & Rem. Code §82.005, a safer alternative design(s) was economically and technologically feasible at the time the product left the control of Defendant SCAG that would have prevented and/or significantly reduced or eliminated the severity of Plaintiff's injuries without substantially impairing the Lawnmower's utility.

4.6 The defects in the design, manufacture, and marketing of the mower were a producing cause of the injuries and damages sustained by Plaintiff.

## V. COUNT TWO: NEGLIGENCE

5.1. Plaintiffs reallege paragraphs 1.1 through 4.6, as set forth in this complaint, *verbatim*.

5.2 Defendant SCAG owed a duty to the Plaintiffs to exercise reasonable care in the design, manufacture, supply, assembly and marketing of their products to the Plaintiffs and to the public. Defendant SCAG's acts and/or omissions constitute a breach of such duty to the Plaintiffs and were, therefore, negligent in one or more of the above-referenced particulars.

5.3 Defendant SCAG's negligence as described above was a proximate and producing cause of the occurrence in question and the resulting injuries and damages sustained by the Plaintiff.

## VI. ACTUAL DAMAGES AND EXEMPLARY DAMAGES

6.1. Plaintiffs reallege paragraphs 1.1 through 5.3, as set forth in this complaint, *verbatim*.

6.2 As a direct and proximate result of Defendant SCAG's conduct, Plaintiff Karen Jean Erwin suffered the following damages: (1) past and future physical impairment; (2) past and future pain and suffering; (3) past and future mental anguish; (4) past and future disfigurement; (5) past and future loss of household services; (6) past and future hospital and medical expenses;

and (7) past and future loss of consortium.  All future damages shall be shown to a reasonable degree of probability.

6.3     As a direct and proximate result of Defendant Scag's conduct, Albert Sidney "Sid" Erwin, Jr. suffered the following damages: (1) past and future mental anguish; and (2) past and future loss of consortium relating to the injuries suffered by his wife, Plaintiff Karen Jean Erwin.

6.4     Plaintiffs would assert the aforementioned conduct of Defendant Scag, concerning the Lawnmower, constituted "gross negligence" as defined by Texas law relating to Plaintiff's injuries.  As such, Plaintiffs seek punitive and exemplary damages as afforded by Texas law.

## VII.  CONDITIONS PRECEDENT

7.1     All conditions precedent to the filing of this suit have occurred or have been satisfied.

## VIII.  PRAYER

WHERFORE, PREMISES CONSIDERED, Plaintiffs pray the Defendant answer and appear, and for judgment against Defendant for the following:

   a.     Actual and exemplary damages;

   b.     Pre-judgment and post-judgment interest, at the highest lawful rate;

   c.     All costs of court; and

   d.     All other relief, in law or in equity, that the court deems appropriate.

Respectfully Submitted,

**AYRES LAW OFFICE, P.C.**

*/s/ Christopher S. Ayres*
**CHRISTOPHER S. AYRES**
State Bar No. 24036167
csayres@ayreslawoffice.com
**R. JACK AYRES, JR.**
State Bar No. 01473000
rjayres@ayreslawoffice.com

One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231
972-991-2222
972-386-0091 (Fax)

**ATTORNEYS FOR PLAINTIFFS**